Slip Op. 18-52

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ATKORE STEEL COMPONENTS, INC.,** Plaintiff, v. **UNITED STATES,** Defendant, | Before: Jane A. Restani, Judge Court No. 17-00077 |

**OPINION**

[Commerce's scope determination regarding cast iron electrical conduit articles remanded.]

Dated: May 15, 2018

David Forgue, Barnes, Richardson & Colburn, LLP, of Chicago, IL, argued for plaintiff. Also on the brief was Brian Walsh, Barnes, Richardson & Colburn, LLP, of Chicago, IL, for Plaintiff Atkore Steel Components, Inc.

Patricia McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. Also on the brief were Chad Readler, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, of Washington, DC, Jeanne Davidson, Director, and Kelly Krystyniak, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC. Of counsel on the brief was Brendan Saslow, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

**Restani, Judge:** In this action challenging a final scope ruling issued by the United States Department of Commerce, International Trade Administration ("Commerce") regarding Atkore Steel

Components, Inc. ("Atkore")'s cast iron electrical conduit fittings, Atkore moves the court to hold Commerce's Scope Ruling, that Atkore's cast iron electrical conduit articles fall within the antidumping order on certain malleable iron pipe fittings ("MIPF") from the People's Republic of China, unsupported by substantial record evidence or otherwise not in accordance with the law. Accordingly, Atkore requests the court hold that its articles are outside the scope of the antidumping order in question, or remand to Commerce for commencement of a formal scope inquiry.

## BACKGROUND

Commerce published an antidumping order applicable to MIPF from the People's Republic of China on December 12, 2003. Antidumping Duty Order: Certain Malleable Iron Pipe Fittings From the People's Republic of China, 68 Fed. Reg. 69,376-02 (Dep't Commerce Dec. 12, 2003) ("Antidumping Order"). The scope of the antidumping order was, in part, "certain malleable iron pipe fittings, cast, other than grooved fittings . . . ." Id. at 69,377. On October 4, 2016, Atkore applied for a scope ruling under 19 C.F.R. § 351.225, requesting Commerce confirm that the following categories of cast iron electrical conduit articles were outside the scope of the Antidumping Order: (1) conduit bodies; (2) conduit nipples; and (3) conduit couplings and connectors (collectively, "conduit fittings").

When Atkore's conduit fittings first entered the United States, the goods were classified under an HTSUS subheading not listed as one of the illustrative categories in the Antidumping Order. Oral Argument at 1:30–1:45, ECF No. 33, Atkore Steel Components, Inc. v. U.S., No. 17-00077 (Ct. Int'l Trade Feb. 8, 2018) ("Oral Arg."). Atkore subsequently filed a prior disclosure,[1] stating that the conduit

---

[1] Errors, such as misclassification of an imported good, made while entering goods into the United States may result in substantial monetary penalties. See 19 U.S.C. § 1592(b)(1)(A). "If the person concerned discloses the circumstances of a violation of subsection (a) . . . before, or without knowledge of, the commencement of a formal investigation of such violation, with respect to such violation, merchandise shall not be seized and any monetary penalty to be assessed . . . shall [be limited as prescribed hereunder]." 19 U.S.C. § 1592(c)(4). Such self-disclosures are called "prior disclosures." Id. Before the court, no party disputes the validity of Atkore's prior disclosure.

fittings were misclassified, and should be re-classified. Id. at 1:54–2:18. Following this reclassification under HTSUS 7307.19.9060, which is one of the illustrative categories in the Antidumping Order, Commerce concluded that Atkore's conduit fittings likely fell within the scope of the antidumping order. Id. This was the status of Atkore's conduit fittings at the time of Atkore's Scope Ruling Request. Scope Ruling Request: Malleable Cast Iron Pipe Fittings from the People's Republic of China (A-570-881), A-570-881, ASCI – Electrical Conduits, at 4 (Dep't Commerce Oct. 4, 2016) ("Scope Ruling Request"). All parties agree that classification under the current HTSUS subheading is correct. Oral Arg. at 2:23–2:37. Atkore paid the additional customs duties due under the new HTSUS category, but not the antidumping duties. Id. at 5:23–5:37.

No preliminary scope ruling was issued during Commerce's consideration of Atkore's application. Rather, following three separate extensions citing the complexity of the issues, Commerce issued its final scope ruling on March 16, 2017. Final Scope Ruling Concerning Cast Iron Electrical Conduit Articles, A-570-881, ASCI – Electrical Conduits (Dep't Commerce Mar. 16, 2017) ("Scope Ruling"). Commerce subsequently instructed U.S. Customs and Border Protection ("CBP") to "[c]ontinue to suspend liquidation" of Atkore's conduit fittings. See Scope determination on antidumping duty order on Malleable Cast Iron Pipe Fittings from the People s Republic of China (A-570-881), A-570-881, ASCI – Electrical Conduits, Message No. IMN 71211, at 2 (Dep't Commerce Mar. 16, 2017). Atkore's conduit fittings thus continue to be subject to suspension of liquidation by CBP. On May 12, 2017, Atkore filed a complaint with the court seeking review of the scope determination.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). This matter is reviewable under 19 U.S.C. § 1516a(a)(2)(B)(vi). "[T]he question of whether the unambiguous terms of [an antidumping duty order] control the inquiry, or whether some ambiguity exists, is a question of law" that the court reviews

de novo.  Meridian Prods., LLC v. U.S., 851 F.3d 1375, 1382 (Fed. Cir. 2017).  Otherwise, Commerce's final results in an administrative review of a scope determination are upheld unless "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  See also Meridian, 851 F.3d at 1381.

## DISCUSSION

**I.      Commerce's Decision to Extend Scope Proceedings**

Atkore contends that Commerce acted unreasonably in failing to issue a decision or initiate a scope inquiry within 45 days of Atkore's scope ruling application.  Plaintiff ASCI's Brief in Support of its Rule 56.2 Motion for Judgment on the Agency Record, ECF No. 24-1, at 3 ("Pl. Br.").  The time limit within which a final scope ruling must be issued or a scope inquiry initiated is prescribed by 19 C.F.R. § 351.225(c)(2):  45 days from the date of Commerce's receipt of an application for a scope ruling.  "Unless expressly precluded by statute, [Commerce] may, for good cause, extend any time limit established by [Title 19, Part 351]."  19 C.F.R. § 351.302(b).  Here, Commerce exceeded the regulatory period by 118 days, from the original 45-day deadline of November 18, 2016, until Commerce issued its scope ruling on March 16, 2017.  See Extension of Time for Scope Ruling, A-570-881, ASCI – Electrical Conduits, at 1 (Dep't Commerce Nov. 14, 2016) ("First Time Extension"); Scope Ruling, at 1.  Nevertheless, Commerce demonstrated good cause for its extensions.

In its petition for a scope ruling, Atkore requested that Commerce interpret the Antidumping Order, which had been subject to both judicial construction and prior scope rulings.  Defendant's Opposition to Plaintiff's Motion for Judgment upon the Agency Record, ECF No. 25, at 16 ("Def. Br.").  Atkore partly grounded its scope arguments in technical industry standards, as well as references to both the physical characteristics and uses of its conduit fittings in relation to the subject MIPF.  Commerce's extension notifications specified that the reason for its extensions was the "complexity of the issues

specified in ASCI's Scope Ruling Request." See First Time Extension; Extension of Time for Scope Ruling, A-570-881, ASCI – Electrical Conduits (Dep't Commerce Dec. 28, 2016); Extension of Time for Scope Ruling, A-570-881, ASCI – Electrical Conduits (Dep't Commerce Feb. 14, 2017). This explanation apparently satisfied Atkore, which waited to object until moving for judgment before the court. Commerce furthermore devoted significant analysis to industry standards in its Scope Ruling. Scope Ruling at 5–6. As observed by Commerce, every prejudice alleged by Atkore presupposes the necessity of a formal scope inquiry. Pl. Br. at 25–26. Such alleged prejudices are therefore unpersuasive as grounds to challenge Commerce's mere extension of the 45-day time limit.[2]

According to the administrative history of 19 C.F.R. § 351.225, Commerce added this 45-day time limit to protect the interests of domestic industry. Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,328 (Dep't Commerce May 19, 1997). The administrative history furthermore suggests the level of complexity requiring an extension of time does not necessarily coincide with the circumstances warranting initiation of a scope inquiry. "Formal initiation of a scope inquiry by the Department represents nothing more than a finding by the Department that it cannot resolve the issue on the basis of the plain language of the scope description or the clear history of the original investigation." Id. (emphasis added). Logically, the issues involved in a particular scope ruling request could be complex and their resolution time-consuming, despite the existence of the history of the relevant investigation which ultimately may reveal a clear answer. Atkore nevertheless requests that the court remedy Commerce's delay by ordering a formal scope inquiry. Pl. Br. at 25–26. The regulations, however, provide no penalty

---

[2] Atkore argues the delay denied it the opportunity to "have the evidence it submitted with respect to the [19 C.F.R. §] 351.225(k)(2) criteria reviewed," Pl. Br. at 25, but Commerce need not review such information in a case where the sources identified under 19 C.F.R. § 351.225(k)(1) are dispositive, 19 C.F.R. § 351.225(d). The decision to extend time for review may be unrelated to Commerce's decision whether to consider subsection (k)(2) evidence.

whatsoever for Commerce's failure to comply with the 45-day time limit, 19 C.F.R. § 351.225(c), and the court declines to impose Atkore's suggested consequence solely on the ground of Commerce's delay.

**II. Commerce's Decision Regarding the Parameters of its Scope Ruling Proceedings**

On other grounds, however, the court holds that Commerce's decision as to the contours of its scope ruling proceedings is flawed. "'[N]o specific statutory provision govern[s] the interpretation of the scope of antidumping or countervailing orders.'" Meridian, 851 F.3d at 1381 (quoting Shenyang Yuanda Aluminum Indus. Eng'g Co. v. U.S., 776 F.3d 1351, 1354 (Fed. Cir. 2015)). Accordingly, the court is guided by Commerce's scope ruling regulation, 19 C.F.R. § 351.225, as interpreted by the Federal Circuit. Under § 351.225(c), scope ruling proceedings may be initiated by, inter alia, the presentation of a "scope ruling request." Atkore presented such a request on October 4, 2016. See Scope Ruling Request at 1.

Cases, like this one, which do not involve products completed or assembled in the United States or other foreign countries, minor alterations of merchandise, or later-developed merchandise, fall under § 351.225(k).[3] See 19 C.F.R. § 351.225(g)–(j). The Federal Circuit has held that, in § 351.225(k) cases, "Commerce's inquiry must begin with the order's scope to determine whether it contains an ambiguity and, thus, is susceptible to interpretation. If the scope is unambiguous, it governs." Meridian, 851 F.3d

---

[3] In full, 19 C.F.R. § 351.225(k) states:

(k) Other scope determinations. With respect to those scope determinations that are not covered under paragraphs (g) through (j) of this section, in considering whether a particular product is included within the scope of an order or a suspended investigation, the Secretary will take into account the following:
    (1) The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission.
    (2) When the above criteria are not dispositive, the Secretary will further consider:
        (i) The physical characteristics of the product;
        (ii) The expectations of the ultimate purchasers;
        (iii) The ultimate use of the product;
        (iv) The channels of trade in which the product is sold; and
        (v) The manner in which the product is advertised and displayed.

at 1381 (internal citations omitted). "The relevant scope terms are 'unambiguous' if they have 'a single clearly defined or stated meaning.'" Id. at 1381 n.7. If, however, the language of the scope order is ambiguous, Commerce more fully analyzes the sources listed in § 351.225(k)(1). Where those sources are dispositive, in other words, the history of the original investigation is clear, Commerce will close the scope ruling proceedings with a "final scope ruling." See 19 C.F.R. § 351.225(d); 62 Fed. Reg. at 27,328.

Where the sources under § 351.225(k)(1) are not dispositive,[4] i.e., where the history of the original investigation is unclear, Commerce must initiate a formal "scope inquiry" under § 351.225(e), and consider the factors listed in § 351.225(k)(2).[5] A scope inquiry may be followed by a "preliminary scope ruling" if the inquiry presents an issue of "significant difficulty," but this is not required in every case. Id. § 351.225(f)(3). When a scope inquiry has been initiated, both the scope inquiry and the scope ruling proceedings conclude with Commerce's final scope ruling.[6]

In its latest filings, the U.S. Department of Justice ("the Government") argues that, despite extensive discussion of (k)(1) sources in Commerce's Scope Ruling, see Scope Ruling at 4, Commerce implicitly determined that the Antidumping Order unambiguously covered Atkore's conduit fittings. Defendant's Supplemental Brief, ECF No. 36, at 10–13 ("Def. Sup. Br."). The Scope Ruling did not analyze (k)(2) sources. Scope Ruling at 4, 6. Assuming, arguendo, that Commerce made such an implicit

---

[4] Neither Atkore's Scope Ruling Request, nor its brief before the court contend that this matter necessarily required recourse to the (k)(2) sources.

[5] Commerce may self-initiate a scope inquiry under 19 C.F.R. § 315.225(b). This did not occur here.

[6] The initiation of a scope inquiry carries significant consequences regarding suspension of liquidation. In this case, however, most of Atkore's conduit fitting entries have already liquidated, and very few, if any, are currently suspended. Oral Arg. at 1:03–1:31, 2:57–4:40. Considering this, the thrust of the parties' arguments, and the fact that any suspension issues may be mooted on remand, the court finds it unnecessary to fully analyze possible suspension of liquidation issues in the present opinion.

determination, the court concludes that the scope of the relevant order is not so clear that the conduit fittings in question are covered by the order, such that no further assessment is needed.

Mid Continent explains the relevant standard as follows: "[J]ust as orders cannot be extended to include merchandise that is not within the scope of the order as reasonably interpreted, merchandise facially covered by an order may not be excluded from the scope of the order unless the order can reasonably be interpreted so as to exclude it." Mid Continent Nail Corp v. U.S., 725 F.3d 1295, 1301 (Fed. Cir. 2013) (emphasis in original). The Federal Circuit's focus on reasonable interpretation necessarily implies that the fact that merchandise is facially included within a broad order with undefined terms is not the end of the analysis. Only a "low threshold" must be cleared to justify a finding of ambiguity, necessitating further review. See Novosteel SA v. U.S., 284 F.3d 1261, 1270–72 (Fed. Cir. 2002) (analyzing whether importer's goods were covered by an antidumping order applicable to "flat-rolled" steel, where that term was undefined).[7]

It is understandable that the Government over-reads both Meridian and Mid-Continent to truncate its inquiry, as broad language is used in those cases. But the more appropriate focus on whether an order is ambiguous arose in the context of an order with specific size limitations. See ArcelorMittal Stainless Belgium N.V. v. U.S., 694 F.3d 82, 89–90 (Fed. Cir. 2012). There, the Federal Circuit would not permit the order to be expanded beyond the unambiguous words of the order, as to do so would run afoul of statutory and regulatory requirements. See id. at 90. Findings of lack of ambiguity to accomplish the

---

[7] In Novosteel, the Federal Circuit upheld Commerce's ambiguity finding as supported by references to flattening procedures found in the importer's commercial brochure and evidence that the importer used a type of mill capable of producing steel covered by the antidumping order in question. 284 F.3d at 1272–73. Importantly, the importer had failed to raise other record evidence which would have called the probative value of the commercial brochure into question. Id. at 1273. In those proceedings, Commerce subsequently initiated a scope inquiry and assessed the § 351.225(k)(2) sources before ruling that the importer's products were within the scope of the antidumping order. Id.

same expansion raise the same potential for inconsistency with the statute and regulations. What the court actually did based on particular facts is no less important than the language used.

Moreover, cases cited by the Government indicate Commerce may consider sources aside from the Antidumping Order in determining whether the good in question unambiguously falls within its scope. See Def. Sup. Br. at 8. Even in ArcelorMittal, the Federal Circuit considered "industry practice" and Commerce's prior scope rulings to check its understanding of the unambiguous scope language. 694 F.3d at 88–90. In Meridian, the Federal Circuit again considered Commerce's prior scope rulings. 851 F.3d at 1384. See also id. at 1383 ("We must first assess whether the plain language of the Order's scope, in light of the disputed 19 C.F.R. § 351.225(k)(1) sources, is unambiguous"). Whereas ArcelorMittal specifically cautioned that "consideration of industry jargon is not the same as conducting a full-fledged analysis of the factors embodied in 19 C.F.R. § 351.225(k)(2)," as Commerce had done in that case, the Federal Circuit did not exclude (k)(1) sources in the same fashion. 694 F.3d at 88 n.8. Further, in the course of its ambiguity analysis, Meridian specifically noted that prior scope rulings "are particularly relevant under [19 C.F.R. §] 351.225(k)(1)." 851 F.3d at 1384 (citing Mid Continent, 725 F.3d at 1304 n.4.). Thus, the Federal Circuit's standards are consistent with § 351.225(k)'s directive that "in considering whether a particular product is included within the scope of an order or a suspended investigation, [Commerce] will take into account [(k)(1) sources, and if necessary, (k)(2) sources]." 19 C.F.R. § 351.225(k) (emphasis added).

Consideration of (k)(1) sources importantly reduces the risk that Commerce would inadvertently impose antidumping duties on a "class or kind of foreign merchandise" for which the pre-duty findings required by 19 U.S.C. § 1673 have not been made with respect to the subject merchandise, including the U.S. International Trade Commission ("ITC")'s injury finding. Cf. Duferco Steel, Inc. v. U.S., 296 F.3d 1087, 1096 (Fed. Cir. 2002) ("A purpose of the investigation is to determine what merchandise should be

included in the final order. Commerce's final determination reflects the decision that has been made as to which merchandise is within the final scope of the investigation and is subject to the order."); id. at 1097 ("'[a]lthough the scope of a final order may be clarified, it can not be changed in a way contrary to its terms.'") (quoting Smith Corona Corp. v. United States, 915 F.2d 683, 686 (Fed. Cir. 1990)). Other parts of the statutory scheme likewise link the scope of the antidumping order with the scope of the underlying investigation. See 19 U.S.C. § 1673e(a)(2) (after making an affirmative determination, Commerce must publish an antidumping order including a description of the "subject merchandise"); 1677(25) (defining "subject merchandise" as "the class or kind of merchandise that is within the scope of an investigation . . . .").

> In relevant part, the scope section of the Antidumping Order at issue covers:
>
> [C]ertain malleable iron pipe fittings, cast, other than grooved fittings, from the PRC. The merchandise is currently classifiable under item numbers 7307.19.90.30, 7307.19.90.60, and 7307.19.90.80 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Excluded from the scope of this Order are metal compression couplings, which are imported under HTSUS number 7307.19.90.80. A metal compression coupling consists of a coupling body, two gaskets, and two compression nuts. These products range in diameter from ½ inch to 2 inches and are carried only in galvanized finish. Although HTSUS subheadings are provided for convenience and customs purposes, the Department's written description of the scope of this Order is dispositive.[8]

Antidumping Order, at 69,376. Neither party contests that the conduit fittings in question are non-grooved, made from cast iron, and are fittings. Def. Br. at 6–7; Plaintiff ASCI's Reply to Defendant's

---

[8] Atkore concedes that its conduit fittings do not fall within the scope of the metal compression coupling exclusion. Scope Ruling at 4 n.24. When the Antidumping Order was issued, the listed HTS categories corresponded with the following: 7307.19.90.30 ("Tube or pipe fittings (for example, couplings, elbows, sleeves), of iron or steel: Cast Fittings: Other: Other Unions"), 7307.19.90.60 ("Tube or pipe fittings (for example, couplings, elbows, sleeves), of iron or steel: Cast Fittings: Other: Other Other: Other: Threaded"), and 7307.19.90.80 ("Tube or pipe fittings (for example, couplings, elbows, sleeves), of iron or steel: Cast Fittings: Other: Other Other: Other: Other"). U.S. INT'L TRADE COMM'N, HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES (2003), Section 73, at 20–21. Though only illustrative, these categories could arguably cover the conduit fittings in question.

Brief in Opposition to Plaintiff's Motion for Judgment on the Agency Record, ECF No. 26, at 10 ("Pl. Reply Br."). Both parties also agree the language in the original petition of the domestic industry regarding end uses provides "illustrative examples, not exclusive uses." Def. Br. at 10; Pl. Reply Br. at 4–5. Atkore, however, contends that "pipe" is both undefined and ambiguous.[9]

"Pipe," a broad term, is undefined within the scope of the Antidumping Order, and is reasonably subject to interpretation. As described below in further detail, by indicating specific pressure requirements, inter alia, the (k)(1) sources which Atkore repeatedly brought to Commerce's attention reasonably create ambiguity as to which "pipe" actually falls within the scope of the Antidumping Order. See Section III, infra. It is not clear from the terms of the Order that all non-grooved cast iron pipe fittings, regardless of physical differences, fall within "certain malleable iron pipe fittings, cast, other than grooved fittings." Antidumping Order, at 69,376.[10]

Considering this lack of clarity, and despite the Government's new arguments to the contrary, Def. Sup. Br. at 9–10, Commerce should have fully considered the (k)(1) sources in rendering its Scope Ruling. Because, as discussed below, Commerce failed to do so, this matter is remanded for further consideration.

### III. Commerce's Substantive Conclusions

Atkore contends that, were the (k)(1) sources fully considered, none of the articles for which it requested a scope ruling would fall within the scope of the Antidumping Order. Complaint, ¶28. With

---

[9] Atkore also argues that the Antidumping Order does not define "certain," Pl. Br. at 17–18, however, Commerce reasonably interpreted "certain" in the context of the specifically enumerated exception contained in the Antidumping Order, Scope Ruling at 4.

[10] Commerce's prior scope ruling expressly disclaimed any obligation to consider (k)(1) sources in making its ambiguity determination. Final Scope Ruling concerning Certain Cast Iron Pipe Connectors, A-570-881, AETAS - Safety Handrail Pipe Connectors, at 3 (Dep't Commerce Oct. 26, 2016). As already established, this does not comport with the requirements set by either the Federal Circuit or § 351.225. Furthermore, the AETAS scope ruling apparently never considered the physical characteristics raised here by Atkore. See id. at 4–5. The court is thus unpersuaded that the AETAS scope ruling favors finding a lack of ambiguity in this case.

regard to each article, it argues that Commerce failed to properly apply information required in 19 C.F.R. § 351.225(k)(1)–(2). Complaint, ¶36–53. "Scope orders may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it." Duferco Steel, 296 F.3d at 1089. "'Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms.'" Id. at 1095 (quoting Eckstrom Indus., Inc. v. U.S., 254 F.3d 1068, 1072 (Fed. Cir. 2001)).

Under 19 C.F.R. § 351.225(k)(1), for scope determinations such as the one at issue in this case, Commerce must take into account "descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of [Commerce] (including prior scope determinations) and the Commission."[11] In determining whether the Antidumping Order covered Atkore's conduit fittings, therefore, Commerce claims to have considered the description from the Antidumping Order, the antidumping petition, Atkore's description of its products in its scope ruling petition, and a prior scope ruling. Scope Ruling at 4.

Ultimately, however, Commerce's Scope Order adopted a broad, allegedly plain language interpretation of the Antidumping Order, with minimal reference to the antidumping petition or other (k)(1) sources. Scope Order at 4–6. Atkore argues that Commerce "effectively expanded the scope of the [Antidumping Order] without supporting language in any of the resources available . . . ." Pl. Br. at 16. Specifically, Atkore faults Commerce's analysis of end use limitations, industry production standards, and physical characteristics.

---

[11] Only where the foregoing sources are not dispositive must Commerce consider the following: "(i) The physical characteristics of the product; (ii) The expectations of the ultimate purchasers; (iii) The ultimate use of the product; (iv) The channels of trade in which the product is sold; and (v) The manner in which the product is advertised and displayed." 19 C.F.R. § 351.225(k)(2). Neither Atkore nor Commerce addressed Section 351.225(k)(2) criteria in the Scope Ruling or their briefs before the court.

Despite Atkore's arguments that Commerce did not interpret the Antidumping Order, Pl. Reply Br. at 5, Commerce appears to have performed some interpretive functions in concluding that the petition's non-exclusive statements regarding end use do not limit the order's scope, see Scope Ruling at 5. The absence of any end use limitations in the scope order, coupled with the non-exclusive use-related language in the petition, provide substantial evidence to support Commerce's characterization. This was, furthermore, the same conclusion reached by Commerce in an earlier scope ruling on the same Antidumping Order. Final Scope Ruling concerning Certain Cast Iron Pipe Connectors, A-570-881, AETAS - Safety Handrail Pipe Connectors, at 4–5 (Dep't Commerce Oct. 26, 2016). "[P]rior scope rulings interpreting the same antidumping order are particularly relevant under subsection 351.225(k)(1), assuming that they do not articulate new interpretive criteria." Mid Continent, 725 F.3d at 1304 n.4 (internal citations omitted).[12]

Regarding voluntary industry production standards, Commerce attempts to blur the line separating physical characteristics required by industry standards from the end uses which drove the creation of those standards. Def. Br. at 12 (citing King Supply Co., LLC v. U.S., 674 F.3d 1343, 1349 (Fed. Cir. 2012)). With regard to end use scope limitations, the Federal Circuit requires clear language in antidumping orders "leav[ing] no reasonable doubt certain products were intended to be outside the scope of the [antidumping] order based solely on the end use of those products," King Supply Co., 674 F.3d at 1349 (emphasis added), but the enforcement concerns underpinning this requirement do not apply to basic physical characteristics. Thus, the industry certification standards referenced by Atkore cannot be ignored. The sources referenced

---

[12] Mid Continent did not further define "new interpretive criteria." 725 F.3d at 1304 n.4. Given that opinion's discussion of "bright line rules" and "formal definitions," Mid Continent, 725 F.3d at 1304 (citing Walgreen Co. of Deerfield, IL v. U.S., 620 F.3d 1350, 1355–56 (Fed. Cir. 2010)), "new interpretive criteria" are understood to refer to Commerce's introduction of a new rule or standard. Plaintiff does not suggest, and the record provides no reason to conclude, that the AETAS scope ruling introduced new criteria relevant to Atkore's complaint.

Case 1:17-cv-00077-JAR   Document 40   Filed 05/15/18   Page 14 of 17
Court No. 17-00077                                                                              Page 14

in § 351.225(k)(1) could yield the interpretation that an ambiguously worded scope order is limited by physical characteristics contained in relevant industry certification standards.

In support of its conclusion that the Antidumping Order does not exclude products adhering to Underwriters Laboratories ("UL") 514A and UL 514B industry specifications, Commerce noted the following: (1) whereas the original antidumping petition referenced only one specific American Society for Testing and Materials ("ATSM") standard, A-126(A), the amended petition generally referenced ATSM, American National Standards Institute ("ANSI") and American Society of Mechanical Engineers ("ASME") standards; (2) the Antidumping Order contains no reference to any industry standards; and (3) the UL 514A and UL 514B standards to which Atkore's conduit fittings are produced reference ATSM, ANSI, and ASME specifications.  Scope Ruling at 5–6.  See Petition for the Imposition of Antidumping Duties:  Malleable Iron Pipe Fittings from China, A-570-881, Investigation, at 4–5 (Dep't Commerce Oct. 30, 2002) ("Original Petition"); Amendment to the Petition for the Imposition of Antidumping Duties: Malleable Iron Pipe Fittings from China, A-570-881, Investigation, at 7 (Dep't Commerce Nov. 12, 2002) ("Amended Petition"); Scope Ruling Request at Ex. 4, p. 2, 4, Ex. 6, p. 2, 4–5.  Atkore did not allege that any other UL industry standards were relevant to its conduit fittings.  Scope Ruling Request at 2–4. Substantial evidence supports Commerce's narrow conclusion as to these technical standards.

Atkore is correct, however, that Commerce's conclusions regarding the physical characteristics of goods subject to the Antidumping Order were unsupported by substantial evidence.  Atkore contends that Commerce wholly ignored the following limiting language, which appeared in both the original and revised antidumping petitions:  "Malleable pipe fittings have a minimal performance rating of 150 PSI for the standard pressure class, and 300 PSI for the heavy duty pressure class."  Original Petition at 5; Amended Petition at 7.  Atkore argues that Commerce should have applied this language in interpreting the term "iron pipe fittings."  Pl. Br. at 17–18.

In its briefs, Commerce admits that "there is nothing in the record to suggest that Atkore's electrical conduits have, would have, or should have a PSI rating, which applies to piping for fluid or gas." Def. Sup. Br. at 9. In its Scope Ruling, however, Commerce similarly acknowledged Atkore's contention that its conduit fittings were not "designed to . . . withstand pressure and temperature changes typical of oil, gas, or sprinkler applications." Scope Ruling at 3. See also Scope Ruling Request at 2–5. Commerce thereafter dispensed with any discussion of physical differences in a footnote, where it observed that Atkore did not argue that its conduit fittings "fall outside the description of MIPF in the scope language, [or we]re otherwise physically different from the merchandise covered by the scope of the Order . . . ." Scope Ruling at 4 n.24. This is plainly contrary to the record.[13] As Commerce noted earlier in its Scope Ruling, Atkore's request included several arguments grounded in alleged physical differences between its conduit fittings and the products subject to the Antidumping Order. See Scope Ruling Request at 3–5.

Further, Atkore did present Commerce with evidence of allegedly relevant physical differences. See, e.g., Scope Ruling Request at 79–87 (commercial catalog pages which omit any mention of pressure-rating); 16–34 (photos of conduit fittings with built-in rollers and stamped box fill information); 49–57 (material regarding recommended levels of exposure to liquids). The Federal Circuit's earlier review of this MIPF Antidumping Order in Sango I and Sango II did not assess arguments based on analogous

---

[13] To the extent Commerce was implicitly stating that only physical differences fully described by the allegedly plain language of the Antidumping Order were relevant to the scope determination, Commerce was wrong. As observed above, antidumping orders must be grounded in an antidumping investigation, including the ITC injury investigation. See 19 U.S.C. § 1673. Thus, although predicated upon the existence of language in the order that is subject to interpretation, Tak Fat Trading Co. v. U.S., 396 F.3d 1378, 1383 (Fed. Cir. 2005), the regulations require Commerce to account for relevant language from the antidumping petition in interpreting the scope of an antidumping order, 19 C.F.R. § 351.225(k)(1). Accordingly, while it is not bound by the precise language of the underlying antidumping petition, Commerce must consider limiting language from the petition, to the extent it is relevant to the products at issue in a particular scope ruling request. See Fedmet Resources Corp. v. U.S., 755 F.3d 912, 921 (Fed. Cir. 2014).

physical differences. See Sango Intern., L.P. v. U.S., 484 F.3d 1371, 1379–82 (Fed. Cir. 2007) ("Sango I"); Sango Intern., L.P. v. U.S., 567 F.3d 1356, 1363–65 (Fed. Cir. 2009) ("Sango II") (considering the absence of a direct connection to pipe and alleged differences in threading). The relevance of Atkore's proffered physical differences in interpreting the Antidumping Order is thus an open question.

On remand, Commerce must determine whether, accounting for all documents mentioned in 19 C.F.R. § 351.225(k)(1), including the antidumping petition and other sources, physical differences raised in Atkore's Scope Ruling Request are relevant to the scope of the Antidumping Order.[14] If so, Commerce must also determine whether Atkore has proffered sufficient evidence to substantiate such differences.[15] If Commerce finds that the (k)(1) sources are not dispositive, it must consider the (k)(2) sources.

---

[14] Analyzing (k)(1) sources for evidence that certain physical characteristics are relevant to the scope of the antidumping order is not equivalent to the more generalized analysis of physical characteristics involved in weighing (k)(2) factors. See Fedmet, 755 F.3d at 919–22 (holding that Commerce erred in analyzing (k)(2) factors where (k)(1) sources provided sufficient evidence of relevant physical characteristics).

[15] As it has not been determined that Atkore's conduit fittings are outside the scope of the Antidumping Order, the court need not determine the propriety of requiring Commerce to issue new instructions to CBP. See Pl. Br. at 27.

## CONCLUSION

For the foregoing reasons, Atkore's motion for judgment on the agency record is **GRANTED**. This matter is **REMANDED** for Commerce to assess the factors set forth in 19 C.F.R. § 351.225(k)(1) indicated in Atkore's Scope Ruling Request, including Atkore's evidence of alleged physical differences between its conduit fittings and the products subject to the Antidumping Order. Commerce shall take additional steps in accordance with the foregoing reasoning, including initiation of a formal scope inquiry and consideration of 19 C.F.R. § 351.225(k)(2) factors, if necessary. Commerce shall have until June 11, 2018, to file its remand results. The parties shall have until June 26, 2018, to file objections, and Commerce shall have until July 11, 2018, to file its response.

                                                                       /s/   Jane A. Restani  
                                                                      Jane A. Restani, Judge

Dated:  May 15, 2018  
       New York, New York